## THE COUNTY COMMISSIONERS OF ALLEGANY COUNTY *vs.* HENRY C. McCLINTOCK.

*Act of 1864, ch. 269—Compulsory vaccination—Liability of County Commissioners to compensate Physician.*

Under the Act of 1864, ch. 269, entitled "An Act for the protection of the people of the State from the small-pox," it is made the duty of the County Commissioners to pay the physician for every child he vaccinates, whose guardian or parents are too poor to pay for the service, the fee prescribed by the Act for the same.

And it is immaterial whether the child be presented voluntarily without suggestion, or after suggestion or invitation from the physician. If the work be done, the county is bound to pay, provided the guardian or parents' inability to pay be sufficiently established.

APPEAL from the Circuit Court for Allegany County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., YELLOTT, MILLER, and IRVING, J.

*Wm. Brace,* for the appellants.

*Wm. M. Price,* and *J. N. Willison,* for the appellee.

IRVING, J., delivered the opinion of the Court.

The appellee being a physician, sued the County Commissioners of Allegany County for his fees for vaccinating a certain number of children whose parents were too poor to pay for the same. To his declaration, the appellants demurred, which being overruled, plea was filed. To this plea the plaintiff demurred, and the demurrer being sustained, judgment was entered for the plaintiff, and defendants appealed. Both demurrers present the same question; and its solution involves the construction of the Act of 1864, chapter 269, entitled "An Act for the protection of the people of the State from the small-pox." This title, and the several provisions of the Act, in our opinion, clearly show the intent of the Legislature to have been, to effectually secure the vaccination of all the children in the State, as the best mode of accomplishing the object indicated in the title.

The first and second sections provide a method for securing a constant supply of vaccine matter, of perfectly reliable character, at the expense of the State, to be furnished to the physicians of the State, at small cost. The third section provides, "that for every child vaccinated whose guardian or parents are too poor to pay for the service, the County Commissioners of the several counties, or the City Council of Baltimore, as the case may be, shall pay or cause to be paid to the physician performing the service, the sum of fifty cents for every such case, on presentation of such account duly authenticated, by an affidavit setting forth that the service was duly performed, and that the parents or guardians are unable to pay for said service."

The fourth section makes it "the duty of every practicing physician in this State to vaccinate all children in the

circle of his practice which may be presented to him for vaccination within one year after birth, if such child shall be in proper condition for such service, and he shall vaccinate all other persons not previously effectually vaccinated who shall request such service from him." Neglect or refusal, on the part of any physician, to do what is therein enjoined is made punishable, on conviction, by a fine of five dollars for each offence.

The fifth section punishes the use of defective virus.

The sixth section declares punishment for parents or guardians who shall neglect to have the children under their care vaccinated, who are in proper condition for vaccination. The seventh section forbids teachers of the public schools from receiving into their schools any child who does not produce a certificate of vaccination; and fixes a penalty for permitting a child to enter the school without such certificate. It is impossible to read these several sections, without being convinced that the Legislature was providing the machinery to coerce the vaccination of all unsuccessfully vaccinated children in the State, who were proper subjects for it. It was intended to be compulsory; for parents and guardians were made punishable for not attending to it; and physicians and school teachers are fineable for disregarding the provisions of the statute. Of course, the physician could not perform the service without the child's coming for the operation; but when the child is presented, or does come for the purpose, the physician must vaccinate, if the child is in proper condition for it, or he is punishable for his neglect or refusal. It is made the duty of the parent and guardian, under penalty, to present for vaccination all children under their care. The law does not mean that they shall personally bring the child to the doctor, but it means simply that they shall cause them to go or be brought to the doctor for vaccination. The law meant to secure the child's vaccination; and it is immaterial whether the child came

or was brought to the doctor, or by whom brought; if he came or was brought for vaccination, the law contemplated that the work was to be done, and payment for the service cannot be refused, if the subjects of the operation were really of the class which the law makes chargeable on the county. It would be singular indeed, if, whilst the law seeks to secure general vaccination, and punishes its neglect, a physician whose duty, under penalty, it is to vaccinate, should be denied his compensation, because the child vaccinated, came or was presented at the suggestion of the doctor of the importance of it, or that it was the duty of the parent or guardian, by the law, to have it done. We cannot suppose the Legislature intended any such unreasonable construction of their language. Very many people would never know of the law, or their duty under it, or of the punishment they were risking by their neglect, unless specially informed of the law and its exactions; and there would seem to be no more suitable person to inform them than the physician who was qualified and prepared to render the service. The object of the law being protective against the spread of the contagion, it would seem to be eminently proper that physicians should, as far as possible, see to it, that the people within their reach should be informed of its provisions, and that all children should be vaccinated. The law offered them inducement to activity in securing compliance with its provisions, by providing for payment for the service by the county or city authorities, when payment was not otherwise procurable. We think, therefore, it was immaterial whether the child was presented voluntarily without suggestion, or after suggestion or invitation from the physician. If the work was done, the county is bound to pay, provided the parent's or guardian's inability to pay be sufficiently established. In this case the declaration was properly sustained. The sole defect relied on, in support of the demurrer, was that the *narr.* failed to charge that the children vaccinated were

*presented by the guardians* or *parents* for the operation. As explained that was supposed to mean a voluntary or unsuggested presentation—an unsolicited presentation. It follows from what we have already said, that the objection was untenable. The plea filed, after demurrer was over-ruled, simply alleged that the children charged for " were not vaccinated at the request of their parents or guardians, but at the request of the plaintiff."

On demurrer the Court ruled the demurrer good and the plea bad ; which was entirely right and in accordance with the views we have expressed. The judgment must be affirmed.

*Judgment affirmed.*

(Decided 2nd November, 1883.)